**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

DR. MELISSA MCCOUL

    *Plaintiff,*

v.

THE TEXAS A&M UNIVERSITY SYSTEM, *et. al.,*

    *Defendants.*

CASE NO. 4:26-CV-00865

## DEFENDANTS' MOTION TO DISMISS

**TABLE OF CONTENTS**

Table of Authorities ................................................................................................... iii

Introduction ...................................................................................................................1

Background ................................................................................................................... 2

Legal Standard ............................................................................................................. 2

Argument .......................................................................................................................3

    I.   This Court lacks subject matter jurisdiction over this case.....................................3

        A.  Sovereign Immunity bars Plaintiff's claims. ..................................................3

            1.   Sovereign immunity bars all monetary damages against Defendants in their official capacity, including punitive damages and mental anguish damages. ...........5

            2.   *Ex parte Young* does not apply to remove sovereign immunity from the Board Defendants. .................................................................................... 6

            3.   Plaintiff's breach of contract claim is barred by sovereign immunity as against the Board Defendants in their official capacity............................................7

    II.  Qualified immunity bars Dr. McCoul's individual capacity claims.................................... 8

        A.  Qualified immunity bars Dr. McCoul's First Amendment Retaliation Claim. .............9

        B.  Qualified immunity bars Dr. McCoul's Due Process of Law Claim........................... 11

    III. State law bars Dr. McCoul's breach of the appointment letter claims...............................14

        A.  Texas contract law bars Dr. McCoul's breach of contract claims because none of the defendants were parties to Dr. McCoul's appointment letter...........................15

Prayer ...................................................................................................................... 20

Certificate of Service.............................................................................................21

**TABLE OF AUTHORITIES**

**Cases**

*Acosta v. Univ. of Texas at El Paso*,
No. EP-06-CA-408, 2007 WL 9701442 (W.D. Tex. Apr. 11, 2007) ........................................5

*Alden v. Maine*,
527 U.S. 706 (1999) ................................................................................................................3

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011) ..........................................................................................................8, 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................3

*City of Houston v. Sauls*,
690 S.W.3d 60 (Tex. 2024) ..................................................................................................19

*City of Lancaster v. Chambers*,
883 S.W.2d 650 (Tex. 1994) ........................................................................................... 17, 19

*Clay v. Texas Women's U.*,
728 F.2d 714 (5th Cir. 1984) ..................................................................................................5

*El Paso Indep. Sch. Dist. v. Richard R.*,
567 F. Supp. 2d 918 (W.D. Tex. 2008) ................................................................................. 4

*Elmen Holdings, L.L.C. v. Martin Marietta Materials, Inc.*,
86 F.4th 667 (5th Cir. 2023) ................................................................................................14

*Enochs v. Lampasas County*,
641 F.3d 155 (5th Cir. 2011) ................................................................................................14

*Farias v. Bexar Cnty. Bd. of Trs. for Mental Health Mental Retardation Servs.*,
925 F.2d 866 (5th Cir. 1991) ............................................................................................... 11

*Fass v. Benson*,
2023 WL 3860441 (Tex. App.—Dallas June 7, 2023, no pet.) ........................................ 12, 14

*First Bank v. Brumitt*,
519 S.W.3d 95 (Tex. 2017) ...................................................................................................15

*Garcetti v. Ceballos*,
547 U.S. 410 (2006) ..............................................................................................................10

*Gay Student Servs. v. Tex. A & M Univ.*,
737 F.2d 1317 (5th Cir. 1984) ................................................................................................3

*Hafer v. Melo*,
502 U.S. 21 (1991) ................................................................................................................. 4

*Haggerty v. Texas S. Univ.*,
391 F.3d 653 (5th Cir. 2004) ................................................................................................16

iii

*Kirkland v. Northside Indep. Sch. Dist.*,
    890 F.2d 794 (5th Cir. 1989) ...................................................................................9, 10

*Long v. Eastfield Coll.*,
    88 F.3d 300(5th Cir. 1996) ...........................................................................................19

*Matagorda Cnty. Hosp. Dist. v. Burwell*,
    189 S.W.3d 738 (Tex. 2006)................................................................................. 12, 13

*Mi Familia Vota v. Abbott*,
    105 F.4th 313 (5th Cir. 2024) .......................................................................................... 6

*Mission Pharmacal Co. v. Molecular Biologicals, Inc.*,
    112 F.4th 337 (5th Cir. 2024) .......................................................................................14

*Mullenix v. Luna*,
    577 U.S. 7 (2015) ............................................................................................................. 8

*Neel v. Tenet Health System Hosps. Dallas, Inc.*,
    378 S.W.3d 597 (Tex. App. 2012) .................................................................................15

*Pearson v. Callahan*,
    555 U.S. 223 (2009) ....................................................................................................8, 10

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984) ...........................................................................................................3

*Pickett v. Texas Tech Univ. Health Scis. Ctr.*,
    37 F.4th 1013 (5th Cir. 2022) .......................................................................................16

*Plotkin v. IP Axess Inc., Etc.*,
    407 F.3d 690 (5th Cir. 2005)...........................................................................................3

*Quern v. Jordan*,
    440 U.S. 332 (1979)......................................................................................................... 4

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001)...........................................................................................3

*Randall D. Wolcott, M.D., P.A. v. Sebelius*,
    635 F.3d 757 (5th Cir. 2011) ......................................................................................2, 3

*Santander v. Salazar*,
    133 F.4th 471 (5th Cir. 2025). .....................................................................................3, 8

*Students Against Racial Discrimination v. Regents of U. of California*,
    No. 8:25-CV-00192, 2025 WL 3727493 (C.D. Cal. Dec. 16, 2025) .........................7

*Sullivan v. Feldman*,
    132 F.4th 315 (5th Cir. 2025) .......................................................................................14

*Sullivan v. Texas A&M Univ. System*,
    986 F.3d 593 (5th Cir. 2021) .......................................................................................... 4

*Texas A&M Univ. Sys. v. Koseoglu*,
  233 S.W.3d 835 (Tex. 2007)........................................................................................4, 16

*Texas Democratic Party v. Abbott*,
  978 F.3d 168 (5th Cir. 2020) .............................................................................................7

*Texas Dep't of Pub. Safety v. Bonilla*,
  481 S.W.3d 640 (Tex. 2015)................................................................................... 16, 17

*Texas Tech Univ. Sys. v. Martinez*,
  691 S.W.3d 415 (Tex. 2024)..........................................................................................19

*U.S. Oil Recovery Site Potentially Responsible Parties Group v. R.R. Comm'n of Texas*,
  898 F.3d 497 (5th Cir. 2018) ........................................................................................ 4

*Vogt v. Bd. of Com'rs of Orleans Levee Dist.*,
  294 F.3d 684 (5th Cir. 2002) .........................................................................................3

**Constitutional Provisions & Statutes**

Fed. R. Civ. P. 12(b)(1) ...................................................................................................3

Fed. R. Civ. P. 12(b)(6) ...................................................................................................3

Tex. Educ. Code § 51.352(d)(2)-(3)...............................................................................19

Tex. Educ. Code § 51.9431(b)........................................................................... 17, 19, 20

Tex. Educ. Code § 51.960(b) ..........................................................................................17

Tex. Educ. Code § 86.02. ................................................................................................19

Tex. Gov't Code Ann. § 311.034 (Vernon 2007) ........................................................... 4

Now Come the Texas A&M University System, Robert Allbritton, Jay Graham, David C. Baggett, John W. Bellinger, James R. Brooks, Micheal A. Hernandez, III, William Mahomes, Jr., Kelley Sullivant Georgiades, and Sam Torn, Regents, Tommy Williams, Mark Welsh, Glenn Hegar and James R. Hallmark, Defendants and file this their Motion to Dismiss the complaint and in support thereof would show the following:

### INTRODUCTION

An untenured lecturer decided to teach a course that was not approved for accreditation in place of the approved course because she had an agenda to indoctrinate students in her preferred gender ideology rather than to communicate the material her employer approved for teaching. Her students complained and the complaints were made public. Her employer eventually terminated her contract after she continued to pursue her own agenda rather than follow the instructions of her employer. The termination was lawful and was certainly no violation of the lecturer's academic freedom or the First Amendment.

As an initial matter, nothing in Plaintiff's lengthy recitation of the facts even alleges that the members of the Board of Regents had anything to do with any adverse employment action. The Regents are protected by sovereign immunity and no factual allegation has even been made against them. They are mentioned in general and in passing in paragraphs 87 and 98 of the complaint. ECF 1, pages 21 and 22. They should be dismissed from this case immediately.

There is likewise no basis for suing Defendants Tommy Williams, Mark Welsh, Glenn Hegar and James R. Hallmark in their individual capacity. All actions taken by them were official actions that did not violate any constitutional provision or statute. They are protected from individual liability by qualified immunity and/or official immunity and there is no basis for holding them individually liable.

Sovereign immunity protects the university system from suit for breach of contract and punitive damages.

## BACKGROUND

Melissa McCoul was an untenured senior lecturer at Texas A&M university during the summer of 2025. She was teaching English 360, Children's Literature during the second summer session. Children's Literature was a class in the core curriculum and would satisfy an English requirement for English majors to take to graduate. The class was re-approved in April of 2025 for accreditation by the entire chain of command of the university including the then-president, General Mark Welsh. See Exhibit A attached. Upon approval by Welsh and the faculty senate, it was forwarded for approval by the Higher Education Coordinating Board. Once the HECB determined that the class met the standard for core class accreditation, it was listed in the course catalog. See Exhibit B.

Rather than teaching English 360 as approved and as described in the course catalog, Dr. McCoul taught her own syllabus version. See Exhibit C attached. She used the class as an opportunity to indoctrinate her students into transgender and LGBTQ ideology. As shown by the student evaluations in that summer session as well as when she taught in the prior years, Dr. McCoul did not act as if the classroom was a place to learn and critically discuss opposing viewpoints. Her class was not a marketplace of ideas. She began the class by introducing herself as an autistic lesbian. She then proceeded to require outside readings that all came from the same viewpoint. Her students did not feel that they were able to express a contrary opinion and indeed when one student did so, that student was told to leave the classroom and not to return. Other students holding similar viewpoints were then told to leave as well. McCoul did not follow school policy with this expulsion. Further, McCoul's actions in kicking out the student and threatening to do the same to other students interfered with those students' academic freedom because of their views on the subject matter.

## LEGAL STANDARD

"The district court must dismiss the action if it finds that it lacks subject matter jurisdiction." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011) ) "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider

2

the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); Fed. R. Civ. P. 12(b)(1). ) "The party asserting jurisdiction bears the burden of proof for a 12(b)(1) motion to dismiss." *Sebelius*, 635 F.3d at 762.

A count should be dismissed when it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). . To avoid dismissal under Rule 12(b)(6), a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While courts must accept all well-pleaded factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc., Etc.*, 407 F.3d 690, 696 (5th Cir. 2005) (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)). Qualified immunity can be asserted in a 12(b)(6) motion to dismiss. *See, e.g.*, *Santander v. Salazar*, 133 F.4th 471, 477 (5th Cir. 2025).

## ARGUMENT

### I.   This Court lacks subject matter jurisdiction over this case.

### A.  Sovereign Immunity bars Plaintiff's claims.

"The States retain 'a residuary and inviolable sovereignty'" which includes immunity from private suits in federal court. *Alden v. Maine*, 527 U.S. 706, 715 (1999) (quoting The Federalist No. 39, at 245 (C. Rossiter ed. 1961) (J. Madison)). Unless a state waives its immunity, sovereign immunity bars suit against a state or one of its agencies in federal court, "regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). A state agency is immune from suit when it is deemed the "alter ego" or "arm" of the State. *Vogt v. Bd. of Com'rs of Orleans Levee Dist.*, 294 F.3d 684, 688–89 (5th Cir. 2002) (citing *Regents of the Univ. of California v. Doe,* 519 U.S. 425, 429 (1997)).

Texas A&M University is entitled to state sovereign immunity as an "arm of the state." *Gay Student Servs. v. Tex. A & M Univ.*, 737 F.2d 1317, 1333–34 (5th Cir. 1984) (state sovereign

3

immunity bars damages award against Texas A&M University); *see also U.S. Oil Recovery Site Potentially Responsible Parties Group v. R.R. Comm'n of Texas*, 898 F.3d 497, 501 (5th Cir. 2018) (collecting cases where the Fifth Circuit has applied state sovereign immunity to particular state agencies, including public universities). A suit against the Texas A&M University System is thus a suit against the State of Texas. *Sullivan v. Texas A&M Univ. System*, 986 F.3d 593, 595 (5th Cir. 2021) (citing *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014)). Likewise, university officials are entitled to sovereign immunity because "[s]uits against state officials in their official capacity [] should be treated as suits against the State. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham,* 473 U.S. 159 (1985)).

"[S]overeign immunity is a jurisdictional roadblock." *Sullivan v. Texas A&M Univ. System*, 986 F.3d 593, 595 (5th Cir. 2021) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996)). Unless an exception applies, all § 1983 claims and the request for declaratory relief against each of the Texas A&M System Defendants in their official capacities are barred by sovereign immunity. Congress has not abrogated state sovereign immunity for claims under § 1983. *Quern v. Jordan*, 440 U.S. 332, 341 (1979)) (holding that Congress did not intend to include states within the term "person" and therefore did not abrogate state sovereign immunity when it enacted § 1983)). Nor has Texas voluntarily waived sovereign immunity for § 1983 claims. *See Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007). Or for breach of contract claims in the employment context. *El Paso Indep. Sch. Dist. v. Richard R.*, 567 F. Supp. 2d 918, 936 (W.D. Tex. 2008) ("For there to be a waiver of immunity from suit in the contract-claim context, the Texas legislature must have waived immunity from suit as to the claim in question by clear and unambiguous language."); *see also* Tex. Gov't Code Ann. § 311.034 (Vernon 2007) ("In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language.")). Finally, the Declaratory Judgment Act does not waive sovereign immunity. *See Acosta v. Univ. of Texas at El Paso*, No. EP-06-CA-408, 2007 WL

9701442, at *2 (W.D. Tex. Apr. 11, 2007) *("A litigant cannot circumvent Eleventh Amendment immunity by pleading a claim under the Declaratory Judgment Act.")*.

Here, Plaintiff's complaint is ambiguous as to which types of relief Plaintiff seeks against each Defendant.  Generally, Plaintiff seeks monetary damages against some Defendants in their individual and official capacities as well as declaratory and injunctive relief against some Defendants in their official capacity.  ECF No. 1 ¶ 78–79, 90–91, 97–98.  As explained *infra*, official immunity bars Plaintiff's claims seeking monetary damages against officials in their individual capacity.  And the claims seeking declaratory and injunctive relief against officials in their official capacity are barred by sovereign immunity absent an exception.  But Plaintiff also seeks compensatory damages, punitive damages, lost wages and compensation, including back pay and front pay, expectancy, reliance, restitution, and consequential damages, mental anguish damages in the past, present, and future, reinstatement, and declaratory relief, and asks the Court to "enter judgment *against Defendants* providing the following relief."  ECF No. 1 (Prayer for Relief) (emphasis added).  Plaintiff fails to specify whether she seeks monetary damages or other non-equitable relief against any official capacity Defendants.  Except to the extent those claims seek monetary relief from Defendants in their individual capacities, absent an exception, Plaintiff's claims are barred, and the case must be dismissed.

      1.    **Sovereign immunity bars all monetary damages against Defendants in their official capacity, including punitive damages and mental anguish damages.**

Because Congress has not abrogated sovereign immunity and Texas has not waived it for § 1983 or breach of contract claims, any award of monetary damages against an official capacity defendant is completely barred.  "The Eleventh Amendment clearly interposes a jurisdictional bar to suits against a state by private parties who seek monetary relief from the state in the form of compensatory damages, punitive damages, or monetary awards in the nature of equitable restitution, and also to suits against a state agency or state official when the monied award is to be paid from the state treasury." *Clay v. Texas Women's U.*, 728 F.2d 714, 715 (5th Cir. 1984) (citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100–01 (1984) & *Quern v. Jordan*, 440

U.S. 332, 337 (1979)).   Thus, compensatory damages, punitive damages, lost wages and compensation, including back pay and front pay, expectancy, reliance, restitution, and consequential damages, and mental anguish damages in the past, present, and future are not available to Plaintiff against the official capacity Defendants.  To the extent, Plaintiff seeks these types of relief against any official capacity Defendant, Plaintiff's claims must be dismissed.

2.      *Ex parte Young* does not apply to remove sovereign immunity from the Board Defendants.

Plaintiff's only recourse is *Ex parte Young*—"a narrow pathway to overcome sovereign immunity." *Mi Familia Vota v. Abbott*, 105 F.4th 313, 330 (5th Cir. 2024). .  *Ex parte Young* provides an exception to sovereign immunity when a suit "seeks prospective, injunctive relief from a state actor, in [his] official capacity, based on an alleged ongoing violation of the federal constitution" or other federal law.  *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013).  But to establish the *Young* exception, a plaintiff must show that the state official, "by virtue of his office," has "some connection with the enforcement of the [challenged] act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Ex parte Young*, 209 U.S. 123, 157 (1908).  To have a sufficient connection to enforcement, the state official must have (1) a "particular duty to enforce the statute in question;" (2) "demonstrated willingness to exercise that duty;" and (3) taken some action which "compel[s] or constrain[s persons] to obey the challenged law." *Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2024)  (quoting *Texas All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022)).  Here, none of the prongs are met.

Plaintiff has not shown that the members of the Board of Regents are proper *Ex parte Young* defendants.  Indeed, she cannot do so because there is no enforcement nexus.  Defendants do not dispute that the Texas A&M System Board of Regents is a governing authority for the Texas A&M System institutions.  But general authority does not equal *Ex parte Young* enforcement, especially when Plaintiff has failed to allege any injurious actions taken by the Board of Regents or any individual member.

Indeed, the Board has general governing authority over the Texas A&M System. Texas law imposes a duty on the Texas A&M System Board Defendants to "make bylaws, rules, and regulations it deems necessary and proper for the government of the university system and its institutions, agencies, and services. The board shall regulate the course of study and prescribe the course of discipline necessary to enforce the faithful discharge of the duties of the officers, faculty, and students." Tex. Educ. Code § 85.21(a).  But *Ex parte Young* requires more than general authority; rather, the Board must be charged with enforcing the particular policy at issue and show "a demonstrated willingness to exercise that duty." *Texas Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)) (internal quotation marks omitted).

Any reliance on *Jackson v. Wright* would be misplaced. 82 F.4th 362, 365 (5th Cir. 2023).  In *Jackson*, the plaintiff alleged some connection between the state officials and challenged conduct in the operative pleadings.  *Jackson*, 82 F.4th at 368.  The officials there had "direct supervisory authority over the [university] officials who took the actions at issue."  *Id.*  Here, McCoul's complaint fails to allege any connection at all between the Board Defendants and the challenged actions. *See Students Against Racial Discrimination v. Regents of U. of California*, No. 8:25-CV-00192, 2025 WL 3727493, at *5 (C.D. Cal. Dec. 16, 2025)  (distinguishing case from *Jackson v. Wright*).  Plaintiff's complaint mentions the Board Defendants only twice and only in conclusory statements hardly sufficient to establish an enforcement connection.  *See* ECF No. 1 ¶¶ 87, 98.  Therefore, in the absence of any facts establishing a connection between the Board Defendants and the challenged actions, they are not proper defendants for *Ex parte Young* purposes.  This Court should dismiss all claims against the Board Defendants.

3.      **Plaintiff's breach of contract claim is barred by sovereign immunity as against the Board Defendants in their official capacity.**

Sovereign immunity also bars Plaintiff's breach of contract claim.  Plaintiff seeks reinstatement, ECF No. 1 ¶ 97, and "monetary damages from the members of the board of regents, university presidents, chancellor, and vice chancellor for academic affairs, in their individual

7

capacities, to remedy the University's breach of Dr. McCoul's contract." ECF No. 1 ¶ 98. Two sovereign immunity problems are apparent here. First, Plaintiff has not sued the Board Defendants in their individual capacities. Sovereign immunity plainly bars monetary damages against official capacity defendants, so this claim should be dismissed as against the Board Defendants. Second, as explained *supra*, Texas has not waived immunity from suit for breach of contract claims like this one. For these reasons, this Court should dismiss Plaintiff's breach of contract claim against the Board Defendants in their official capacity.

## II.    Qualified immunity bars Dr. McCoul's individual capacity claims.

Qualified immunity bars Dr. McCoul's individual capacity claims against President Williams, General Welsh, Chancellor Hegar, and Vice Chancellor Hallmark. This doctrine prevents courts from awarding damages against a government official in his personal capacity unless: (1) "the official violated a statutory or constitutional right," and (2) "the right was 'clearly established' at the time of the challenged conduct." *Pearson v. Callahan*, 555 U.S. 223, 243 (2009) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Courts "have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *al-Kidd*, 563 U.S. at 735.

The question of whether the right was "clearly established" must be "beyond debate" at the time of the government official's action. *Pearson*, 555 U.S. at 246  (quoting *al-Kidd*, 563 U.S. at 741). And while a "case directly on point" is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741  (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). At the motion to dismiss stage, it is the "plaintiff's burden" to show that "it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right,'" where the identified "right may not be defined at a 'high level of generality.'" *Santander v. Salazar*, 133 F.4th 471, 478, 480 (5th Cir. 2025)  (first quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015), then quoting *al-Kidd*, 563 U.S. at 742)). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix*, 577 U.S. at 12  (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

**A. Qualified immunity bars Dr. McCoul's First Amendment Retaliation Claim.**

The Fifth Circuit has long held that when a nontenured public school teacher speaks in her role as an employee, not in her role as a citizen, that speech is not protected by the First Amendment. "It is well settled that even nontenured public school teachers do not shed first amendment protection in speaking on matters of public concern. The rationale is that public school employees are entitled to the same measure of constitutional protection as enjoyed by their civilian counterparts when speaking as 'citizens' and not as 'employees.' Thus, issues do not rise to a level of 'public concern' by virtue of the speaker's interest in the subject matter; rather, they achieve that protected status if the words or conduct are conveyed by the teacher in his *role as a citizen* and not in his *role as an employee* of the school district." *Kirkland v. Northside Indep. Sch. Dist.*, 890 F.2d 794, 798 (5th Cir. 1989) (quoting *Terrell v. Univ. of Texas Sys. Police*, 792 F.2d 1360, 1362 (5th Cir. 1986)) (internal citations omitted, emphasis in *Kirkland*).

If the speech in question achieves First Amendment protected status because it is "conveyed by the teacher in his role as a citizen," the First Amendment inquiry advances only if the speech was a "substantial or motivating factor" behind an adverse employment action. *See Kirkland*, 890 F.2d at 799 ("If, however, the employee's speech relates to a matter of "public concern" and is deemed to have been a substantial or motivating factor in failing to rehire the teacher, the inquiry advances."). "At this point, courts must balance 'the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Id.*. (quoting *Pickering*, 391 U.S. 563, 568 (1968)).

However, if the speech in question does not meet this standard, "the nature of the speech is purely private." *Kirkland*, 890 F.2d at 799; *id.* at 799 n. 12 (citing *Clark v. Holmes*, 474 F.2d 928, 931 (7th Cir. 1972), a case about a nontenured state university teacher, for the proposition that a "teacher's dispute with colleagues and superiors about course content not a matter of public concern")). And in this context, "a nontenured school teacher enjoys no first amendment protection as to that speech." *Id.* (citing *Connick v. Myers*, 461 U.S. 138, 146 (1983)). "Judicial injury

9

then comes to an end, and the question of whether the employee's speech was a substantial or motivating factor in the decision not to rehire him need not even be reached." *Id.* (citing *Ferrara v. Mills*, 781 F.2d 1508, 1512 (11th Cir. 1986)).

The Supreme Court later adopted the *Kirkland* Court's reasoning in *Garcetti*. In *Garcetti*, the Supreme Court held "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate the communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). . The Supreme Court explained that the "significant point" in *Garcetti* was that the speech in question "was written pursuant to [Plaintiff's] official duties." *Id.* The Court then explained that "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Id.* at 421-22 (citing *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 833 (1995)).

While it is true that the *Garcetti* Court excepted "academic freedom" from its holding and chose not to decide whether its holding "would apply in the same manner to a case involving speech related to scholarship or teaching," the *Garcetti* Court did not overrule existing circuit precedent on this issue, either. *Garcetti*, 547 U.S. at 425. And longstanding Fifth Circuit precent has held that when a public school teacher speaks in her role as an employee, not in her role as a citizen, that speech is not protected by the First Amendment. *Kirkland*, 890 F.2d at 798.

Plaintiff fails to meet her burden of proof. Plaintiff must prove that President Williams, General Welsh, Chancellor Hegar, and Vice Chancellor Hallmark "violated a statutory or constitutional right" and that "the right was 'clearly established' at the time of the challenged conduct." *Pearson v. Callahan*, 555 U.S. at 243 (2009) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). And to show that a government official's conduct "violates clearly established law . . . existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Even if the allegations

10

in Dr. McCoul's complaint are taken as true, it is not clear that Dr. McCoul was terminated because of the subject matter of her course. For example, Dr. McCoul may have been terminated because administrators believed, perhaps mistakenly, that Dr. McCoul was being obstructionist because she was "instructed on multiple occasions to change the course content to align with the catalog description and the course description that was originally submitted and approved" but she "chose not to follow the directive." ECF 1 at 11. And even if the Court assumes that Dr. McCoul was terminated because of the subject matter of her course, Plaintiff has failed to provide "existing precedent" that shows these Defendants' conduct "violates clearly established law."

## B.  Qualified immunity bars Dr. McCoul's Due Process of Law Claim.

Dr. McCoul has also failed to meet her burden of proof to: (1) show she had a property interest in her continued employment with the University, and that President Williams, General Welsh, Chancellor Hegar, Vice Chancellor Hallmark, or members of the Board of Regents violated her statutory or constitutional rights; and (2) provide existing caselaw that shows the allegedly violated right was clearly established beyond debate at the time of the challenged conduct. Furthermore, note that Plaintiff did not bring this action against members of the Board of Regents in their individual capacities. ECF 1 at 1, 3-4.

Dr. McCoul did not have a property interest in her continued employment with the University. "In order to establish a property interest for due process purposes, [Plaintiff] must have a legitimate claim of entitlement to continued employment." *Farias v. Bexar Cnty. Bd. of Trs. for Mental Health Mental Retardation Servs.*, 925 F.2d 866, 877 (5th Cir. 1991)  (citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). To determine whether there is a property interest, federal courts "look to state law." *Id.*  (citing *Bishop v. Wood*, 426 U.S. 341, 344 (1976)). "The hallmark of a protected property interest is an entitlement under state law that cannot be removed except for cause." *Id.*  (citing *Burris v. Willis Indep. School Dist.*, 713 F.2d 1087, 1019 (5th Cir. 1983)). If a Plaintiff "could be discharged at will, he had no protected property interest, and no right to a due process hearing." *Id.*  (citations omitted).

11

Under Texas law, to "have a constitutionally protected property interest, a person must have a 'legitimate claim of entitlement' rather than a mere 'unilateral expectation.'" *Fass v. Benson*, 2023 WL 3860441, at \*6 (Tex. App.—Dallas June 7, 2023, no pet.) (mem. op.) (quoting *Honors Acad., Inc. v. Texas Educ. Agency*, 555 S.W.3d 54, 61 (Tex. 2018)). "A state agency's failure to follow its own procedural rules governing employment will not create a property interest which otherwise does not exist." *Fass*, 2023 WL 3860411, at \*7 (citing *Alford v. City of Dallas*, 738 S.W.2d 312, 316 (Tex. App.—Dallas 1987, no writ)). In order for a plaintiff "to have a procedural due process cause of action, the plaintiff must establish a protectable property interest separate and apart from the rules themselves." *Id.* (citing *Alford*, 738 S.W.2d at 316) (holding that a professor does not have a property interest in the UT System's procedures and rules regarding grievances for addressing deficient teaching methods). "Procedural rights that protect due process cannot be used to 'bootstrap' an employee into having a property interest entitlement." *Id.* (citing *San Benito Consol. Indep. Sch. Dis. v. Leal*, 2022 WL 243725, at \*8 (Tex. App.—Corpus Christi–Edinburg Jan. 27, 2022, no pet.) (mem. op.); *Cote v. Rivera*, 894 S.W.2d 536, 541 (Tex. App.—Austin 1995, no writ); *Evans v. City of Dallas*, 861 F.2d 846, 849 (5th Cir. 1988)). This is true even when a professor alleges his contract "required him to abide by UT System's policies and rules, and appellees violated those rules" because "requiring Professor Fass to follow UT System's rules does not make them his property and will not establish a protectable property interest separate and apart from the rules themselves." *Id.*

The Texas Supreme Court has also explicitly considered whether "a statement in a personnel policy manual that '[e]mployees may be dismissed for cause' constitutes an agreement that dismissal may be *only* for cause, thereby modifying the at-will employment relationship" and held that "it does not." *Matagorda Cnty. Hosp. Dist. v. Burwell*, 189 S.W.3d 738, 738 (Tex. 2006) (emphasis in original). The *Burwell* Court noted that the "court of appeals misread the manual" because it "provides that dismissal may be for cause, but it nowhere suggests that dismissal may be *only* for cause, and that limitation cannot be simply inferred." *Id.* at 739. The *Burwell* Court noted: "'For well over a century, the general rule in this State, as in most American jurisdictions, has been

12

that absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all.'" *Id.* (quoting *Montgomery County Hospital District v. Brown*, 965 S.W.2d 501, 502 (Tex.1998) (citations omitted)). In light of this default rule, the *Burwell* Court held that even if it assumed the manual created a contract, a statement that "an employee may be dismissed for cause is not a specific agreement that an employee may be dismissed only for cause." *Id.*

Dr. McCoul is an at-will employee. Her notice of appointment letter from the University states that renewal of her appointment "is contingent upon, but is not limited to, your continued satisfactory performance, the availability of continued funding, *departmental and college needs*, *or any other unforeseen event*." 2025-2026 Reappointment Letter for Melissa McCoul, Ex. D at 1 (emphasis added). This description does not give Dr. McCoul an "entitlement" to employment. The contract explicitly notes that her appointment may not be renewed if the school no longer needs her or due to "any other unforeseen event." *Id.* Suffice to say, the University has determined that her services are no longer needed. In addition, her violation of the students' academic freedom which is essential to the free exchange of ideas is an event that once revealed shows a violation of school policy. Dr. McCoul does not have a property interest in her renewed appointments.

Plaintiff also alleges that "University Policy 12.01.99.M1, 'University Statement on Academic Freedom, Responsibility, Tenure, and Promotion' contains detailed and robust requirements and procedures the University must meet to 'summarily terminate' faulty like Dr. McCoul" and that "[t]hese procedures give Dr. McCoul a property interest in her continued employment with the University." Complaint, ECF 1 at 20. Specifically, Plaintiff alleges that TAMU failed to meet the procedural requirements of University Policy 12.01.99.M1 because Dr. McCoul "never received a 'notice of intent' to summarily dismiss her from the University that included 'the written charges for dismissal', 'an explanation of the evidence', and 'an opportunity to respond to the Provost'" and because "Dr. McCoul received no hearing 'prior to summary dismissal' before the Provost decided whether to proceed with the summary dismissal." *Id.*

13

As an initial matter, none of the defendants in this suit are parties to the appointment letter. None of them had any obligations thereunder. Moreover, Dr. McCoul was not entitled to a full hearing in a summary dismissal. She was only entitled to a meeting with the provost. In addition, the hearing she is entitled to is the CAFRT and it is the hearing she had. With a full opportunity to present evidence, examine and cross-examine witnesses. The hearing lasted over 8 hours with 11 witnesses and 60 exhibits. Notably, Plaintiff did not seek the testimony of General Welsh nor interim president, Tommy Williams.

However, Plaintiff has not provided any precedent that shows President Williams, General Welsh, Chancellor Hegar, and Vice Chancellor Hallmark violated Dr. McCoul's right to constitutional due process, nor has Plaintiff provided any "existing precedent" that "clearly establishes" her right "beyond debate" at the time of the challenged actions. After all, in order for a plaintiff "to have a procedural due process cause of action, the plaintiff must establish a protectable property interest separate and apart from the rules themselves." *Fass*, 2023 WL 3860411, at *7 (citing *Alford*, 738 S.W.2d at 316). "Procedural rights that protect due process cannot be used to 'bootstrap' an employee into having a property interest entitlement." *Id.* (citations omitted). And even if University Policy 12.01.99.M1 does create a contractual right, Plaintiff does not carry her burden to show that Dr. McCoul can *only* be dismissed for cause.

## III.    State law bars Dr. McCoul's breach of the appointment letter claims.

Contract disputes in federal court are generally governed by state substantive law. *See, e.g.*, *Enochs v. Lampasas County*, 641 F.3d 155, 162 (5th Cir. 2011) (contract dispute in federal court via supplemental jurisdiction a state law claim); *Elmen Holdings, L.L.C. v. Martin Marietta Materials, Inc.*, 86 F.4th 667, 678 (5th Cir. 2023) ("Whether a party has breached a contract is also governed by state law in diversity cases."). "'State contract law controls 'the scope of agreements (including the question of who is bound by them).'" *Sullivan v. Feldman*, 132 F.4th 315, 334–35 (5th Cir. 2025) (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009)). Additionally, the question of whether a contract was breached is governed by state substantive law. *Mission Pharmacal Co. v.*

*Molecular Biologicals, Inc.*, 112 F.4th 337, 340 (5th Cir. 2024) (applying the four breach of contract elements articulated by the Texas Supreme Court).

Not a single defendant in this case was a party to the notice of appointment letter that Plaintiff claims is her contract. There is no claim for breach of a contract to which the defendants aren't a party. This claim should be dismissed in its entirety.

In addition, Plaintiff's breach of contract claim is governed by state law. Plaintiff's Complaint does not bring a federal cause of action for her Breach of Contract Claim, nor does Plaintiff's Complaint argue that federal substantive law should govern her Breach of Contract Claim. *See* ECF 1 at 21-22. And under Texas contract law, President Williams, General Welsh, Chancellor Hegar, and Vice Chancellor Hallmark cannot be held individually liable for any alleged breach of Dr. McCoul's contract. Plaintiff's Complaint also states that she seeks monetary damages for any alleged breach of Dr. McCoul's contract from the members of the Board of Regents in their individual capacities. ECF 1 at 22. While these claims are unavailing because Plaintiff did not bring this action against the members of the Board of Regents in their individual capacities, ECF 1 at 1, 3-4, the members of the Board of Regents also cannot be held individually liable for any alleged breach of Dr. McCoul's contract under Texas contract law.

## A. Texas contract law bars Dr. McCoul's breach of contract claims because none of the defendants were parties to Dr. McCoul's appointment letter.

It is a well-established principle of Texas contract law that "the benefits and burdens of a contract belong solely to the contracting parties." *First Bank v. Brumitt*, 519 S.W.3d 95, 103 (Tex. 2017). And "an agent is not personally liable on contracts made for a disclosed principal, in the absence of an express agreement to be bound." *Neel v. Tenet Health System Hosps. Dallas, Inc.*, 378 S.W.3d 597, 605 (Tex. App. 2012); *accord Elgohary v. Herrera*, 405 S.W.3d 785, 790-91 (Tex. App. 2013) (finding that agent cannot be bound in his individual capacity by signing for his principal).

In the present case, Dr. McCoul's appointment letter was between the University and Dr. McCoul. The letter was issued pursuant to the authority of Professor Mark Zoran, the Dean of the College of Arts and Sciences, in his official capacity, and was sent to Dr. McCoul by Professor

Johansen, the Department Head of the Department of English. 2025-2026 Reappointment Letter for Melissa McCoul, Ex. D. The subject matter of the letter concerns Dr. McCoul's employment relationship with the University.  There is nothing in the letter related to Dr. McCoul's relationship to President Williams, General Welsh, Chancellor Hegar, Vice Chancellor Hallmark, or the members of the Board of Regents. *See id.* President Williams, General Welsh, Chancellor Hegar, Vice Chancellor Hallmark, and the members of the Board of Regents are not signatories to the letter, nor is there any evidence these defendants established "an express agreement to be bound" in their personal or official capacities. See *id.* Therefore, Plaintiff's breach of contract claims should be dismissed.

If the Defendants sued in their individual capacity were parties to the notification of appointment letter, then they can assert official immunity as a defense to a breach of contract claim for monetary damages. *See Texas A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 835, 843 (Tex. 2007) (suit by employee against his supervisor and TAMU alleging breach of employment contract). Official immunity is "'an *immunity from suit* rather than a mere defense to liability' [and] 'it is effectively lost if a case is erroneously permitted to go to trial.'" *Pickett v. Texas Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1024 (5th Cir. 2022)  (quoting *Burge v. Par. of St. Tammany*, 187 F.3d 452, 476 (5th Cir. 1999)) (emphasis in original). "A governmental employee is entitled to official immunity for the good-faith performance of discretionary duties within the scope of the employee's authority." *Texas Dep't of Pub. Safety v. Bonilla*, 481 S.W.3d 640, 643 (Tex. 2015). "'Texas law of official immunity is substantially the same as federal qualified immunity law.'" *Haggerty v. Texas S. Univ.*, 391 F.3d 653, 658 (5th Cir. 2004) (quoting *Wren v. Towe*, 130 F.3d 1154, 1160 (5th Cir.1997)); *see also Perdomo v. City of League City, Texas*, 163 F.4th 921, 926, 926 n.6 (5th Cir. 2026) (stating that "official immunity in Texas is substantially the same as qualified immunity under federal law" while also noting that "state immunity substitutes a 'good faith' requirement for federal immunity's 'clearly established law' requirement." (cleaned up)).

"Viewed properly, the good-faith standard is analogous to an abuse-of-discretion standard that protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Texas Dep't*

16

*of Pub. Safety v. Bonilla*, 481 S.W.3d 640, 643 (Tex. 2015).   The standard is "'not equivalent to a general negligence test, which addresses what a reasonable person *would have done*'" but instead the "appropriate focus is what a reasonable officer *could have believed*." *Id.*   (quoting *Wadewitz v. Montgomery*, 951 S.W.2d 464, 467 n.1 (Tex. 1997)) (emphasis in original). The "determinative inquiry" is whether "any reasonably prudent officer possessed of the same information could have determined" the allegedly unlawful actions "were justified." *Id.*   (citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 657 (Tex. 1994) ); *id.* at 643  (when there is evidence of good faith, that element is established "unless the plaintiff shows that *no* reasonable person in the officer's position could have thought the facts justified the officer's actions"); *see also Chambers*, 883 S.W.2d at 656 (noting that the good faith test "is derived substantially from the test that has emerged under federal immunity law for claims of qualified immunity in § 1983 cases").

President Williams, Chancellor Hegar, and Vice Chancellor Hallmark acted in good faith. There are no allegations or evidence of bad faith from these defendants, and they are barely mentioned in the Complaint. Plaintiff's complaint only alleges that "TAMU Interim President Tommy Williams rejected the CAFRT Committee's recommendation, so the appeal proceeded to the Chancellor for his review and final determination." ECF 1 at 4, 17. Plaintiff's complaint only alleges that Chancellor Hegar "referred the final decision to terminate Dr. McCoul to the Vice Chancellor for Academic Affairs, Defendant James R. Hallmark." ECF 1 at 4, 17. Plaintiff's Complaint only alleges that Vice Chancellor Hallmark "upheld Dr. McCoul's termination." ECF 1 at 4, 17. While Dr. McCoul is not entitled to a pre-dismissal hearing, she is entitled to a post-dismissal hearing by statute. Tex. Educ. Code § 51.960(b) ("A faculty member at an institution of higher education has a right to present a grievance, in person, to a member of the institution's administration designated by the governing board of the institution on an issue related to the nonrenewal or termination of the faculty member's employment at the institution."). Dr. McCoul exercised this right when she sought a hearing before the CAFRT Committee. However, there is no requirement for the President, Chancellor, or Vice Chancellor to accept the recommendation of the CAFRT Committee. *See, e.g.*, Tex. Educ. Code § 51.9431(b) ("*Only* the president or chief

17

executive officer or provost of an institution of higher education, university system administration, or the president's or chief executive officer's, provost's, or administration's designee *may be involved in decision-making* regarding review of a faculty grievance, including under Section 51.960, or the faculty discipline process." (emphasis added)).

General Welsh also acted in good faith. Even if Plaintiff's allegations in her Complaint are taken as true, General Welsh's actions satisfy the good faith standard. Plaintiff's complaint states that General Welsh, while he was President, "made the decision to terminate Dr. McCoul's employment with TAMU." ECF 1 at 4, 12-13. According to the Complaint, President Welsh represented that he "directed the provost to remove the dean and department head from their administrative positions" because they had "approved plans to continue teaching course content that was not consistent with the course's published description." ECF 1 at 10. The Complaint states that President Welsh represented that "the college continued to teach content that was inconsistent with the public course description" despite the fact he previously "made it clear to [the] academic leadership that course content must match catalog descriptions." ECF 1 at 11. The Complaint also states that Dr. McCoul's termination notice states that she was "instructed on multiple occasions to change [her] course content to align with the catalog description and the course description that was originally submitted and approved" but she "chose not to follow the directive." ECF 1 at 11. Even if in reality Dr. McCoul was never instructed to change her course content, a mistaken understanding of fact does not violate the good faith standard. *See Bonilla*, 481 S.W.3d at 643–44. A reasonable officer in General Welsh's position with the same information "could have believed" that General Welsh's decision to dismiss Dr. McCoul was justified. *Bonilla*, 481 S.W.3d at 643. Certainly, it is not true that "no reasonable person" in General Welsh's position could have thought his actions were unjustified.

There is no allegation, and no evidence, that Ms. Sullivan Georgiades and Messrs. Albritton, Graham, Baggett, Bellinger, Brooks, Hernandez, Mahomes, and Torn were involved in the dismissal of Dr. McCoul. *See generally* ECF 1. Outside of naming these defendants as members of the Board of Regents of the Texas A&M University System sued in their official capacity, ECF

18

1 at 1, 3-4, the Complaint does not otherwise mention any of these defendants. *See generally* id. Notably, this cursory treatment also does not plead sufficient factual content to avoid dismissal under the Rule 12(b)(6) standard.

The allegedly unlawful actions taken by President Williams, General Welsh, Chancellor Hegar, and Vice Chancellor Hallmark were discretionary. "A duty is discretionary if its performance involves 'personal deliberation, decision, and judgement.'" *City of Houston v. Sauls*, 690 S.W.3d 60, 70 (Tex. 2024) (quoting *Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 425 (Tex. 2004); citing *Chambers*, 883 S.W.2d at 654.). The decisions by President Williams, Chancellor Hegar, and Vice Chancellor Hallmark to reject the recommendation of the CAFRT Committee were discretionary decisions. Similarly, the decision by General Welsh to dismiss Dr. McCoul was a discretionary decision. *See, e.g.*, Tex. Educ. Code § 51.9431(b). There are no allegations or evidence that Ms. Sullivan Georgiades or Messrs. Albritton, Graham, Baggett, Bellinger, Brooks, Hernandez, Mahomes, or Torn made any decisions relevant to Dr. McCoul's dismissal, though any decisions that the individual members of the Board of Regents could make would be discretionary. *See, e.g.*, Tex. Educ. Code § 86.02. Thus, all such decisions are covered by official immunity preventing claims against them in their individual capacity.

Similarly, the allegedly unlawful actions taken by President Williams, General Welsh, Chancellor Hegar, and Vice Chancellor Hallmark were within their scope of authority. "An official acts within the scope of her authority if she is discharging the duties generally assigned to her." *Chambers*, 883 S.W.2d 650, 658 (Tex. 1994); *see also id.* at 650 n.9 (noting that the Supreme Court also "rejected the notion that an officer necessarily operates outside of the scope of the officer's authority when acting unlawfully" in the qualified immunity context (citing *Anderson v. Creighton*, 483 U.S. 635, 643 (1987)). The chancellor is the chief executive officer of a university system, and a president is the chief executive officer of an individual institution. Tex. Educ. Code § 51.352(d)(2)-(3). Public university presidents can terminate employees. *See, e.g.*, *Texas Tech Univ. Sys. v. Martinez*, 691 S.W.3d 415, 416 (Tex. 2024) ; *Long v. Eastfield Coll.*, 88 F.3d 300, 306 (5th Cir. 1996). President Williams, Chancellor Hegar, and Vice Chancellor Hallmark can review, and

19

choose to reject, the CAFRT Committee's recommendations. *See, e.g.*, Tex. Educ. Code § 51.9431(b).  All decisions at issue in this case were within their respective scope of authority and thus there are no individual capacity claims that survive.

**PRAYER**

Defendants respectfully request the Court dismiss Plaintiff's claims with prejudice.

Date: April 10, 2026

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

ROB FARQUHARSON
Deputy Attorney General for Legal Strategy

RYAN G. KERCHER
Chief, Special Litigation Division

OFFICE OF THE ATTORNEY GENERAL OF
TEXAS
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100

Respectfully submitted.

*/s/ Keith Ingram*
BRIAN KEITH INGRAM
Special Counsel
Texas State Bar No. 00787746
SDTX No. 196534
keith.ingram@oag.texas.gov

BRIAN B. TUNG
Assistant Attorney General
Special Litigation Division
Texas State Bar No. 24145179
SDTX No. 3937738
Brian.Tung@oag.texas.gov

LAUREN E. SAEGER
Assistant Attorney General
Texas State Bar No. 24149365
SDTX No. 3943412
lauren.saeger@oag.texas.gov


COUNSEL FOR THE STATE OF TEXAS


## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on April 10, 2026, a true and correct copy of the above and foregoing document has been served using the CM/ECF system to all counsel and parties of record.


*/s/ Keith Ingram*
BRIAN KEITH INGRAM
Special Counsel
Texas State Bar No. 00787746
SDTX No. 196534
keith.ingram@oag.texas.gov

21