**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| DR. MELISSA MCCOUL | |
| *Plaintiff,* | |
| v. | CASE NO. 4:26-CV-00865 |
| THE TEXAS A&M UNIVERSITY SYSTEM, *et. al.,* | |
| *Defendants.* | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Now Come Defendants the Texas A&M University System, Robert Allbritton, Jay Graham, David C. Baggett, John W. Bellinger, James R. Brooks, Micheal A. Hernandez, III, William Mahomes, Jr., Kelley Sullivant Georgiades, and Sam Torn, Regents, Tommy Williams, Mark Welsh, Glenn Hegar and James R. Hallmark, and file this, their Reply in Support of Motion to Dismiss the complaint and would show the following:

1

## TABLE OF CONTENTS

Argument ..................................................................................................................... 1

    A.  The Court should decide the Motion to Dismiss on the pleadings. It should not be converted to summary judgment under Rule 12(d). ............................................... 1

    B.  Sovereign Immunity Bars Official-Capacity Claims under Rule 12(b)(1). .......................... 3

    C.  Qualified Immunity bars the First Amendment Claim under Rule 12(b)(6). ....................... 5

    D.  Qualified Immunity bars the Procedural Due-Process Claim under Rule 12(b)(6). ............ 7

Conclusion ................................................................................................................. 10

Certificate of Service ................................................................................................... 11

## ARGUMENT

**A.  The Court should decide the Motion to Dismiss on the pleadings. It should not be converted to summary judgment under Rule 12(d).**

Plaintiff argues the Court should convert Defendants' Motion to Dismiss, ECF 14, to a summary judgment motion pursuant to Rule 12(d) because it includes three exhibits. Plaintiff unsuccessfully attempts to remedy her deficient Complaint by submitting a sixty-four-page summary judgment response attaching sixty-one new exhibits. *See* ECF 21 at 10, 42–43, 51–52, 57 (applying the summary judgment standard). The Court should decline Plaintiff's attempted conversion and decide Defendants' Motion to Dismiss on the pleadings.

Defendants' exhibits are properly before the Court. "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citation omitted). The Complaint repeatedly relies on McCoul's syllabus, ECF 14-3, the catalog description, ECF 14-2, Policy 12.01.99.M1, and McCoul's employment contract[1]—thus these materials are part of the pleadings and do not convert under Rule 12(d). Furthermore, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citation omitted). The syllabi, ECF 14-1, 14-3, are matters of public record subject to judicial notice. Tex. Educ. Code § 51.974 (undergraduate course syllabi shall be public records). So is the Texas A&M English Department Course Catalog, ECF 14-2.[2]

Additionally, the qualified immunity doctrine counsels against conversion. Qualified immunity turns on whether the alleged conduct violated "clearly established" law, an inquiry that "must be 'particularized'" and measured against controlling precedent—a question of law on the face of the complaint. *White v. Pauly*, 580 U.S. 73, 79 (2017); *Wetherbe v. Tex. Tech. Univ. Sys.*, 138 F.4th 296,

---

[1] The employment contract is referred to as "Ex. D" in the Motion to Dismiss. It is reattached to this filing as "Exhibit 1" (ECF 26-1).

[2] *See* Catalog Production Information, Texas A&M Office of the Registrar, https://registrar.tamu.edu/curricular-services/catalog/catalog-production-information.html.

301–306 (5th Cir. 2025) (granting qualified immunity on the pleadings). The Court need not consider any extrinsic exhibits to grant the Motion. Furthermore, qualified immunity is "an immunity from suit rather than a mere defense to liability" that is "an entitlement" that protects officials from the "burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). If conversion occurs, the Court must give "[a]ll parties . . . a reasonable opportunity to present *all the material that is pertinent*" to the converted summary judgment motion. Fed. R. Civ. P. 12(d) (emphasis added). Allowing a plaintiff to force summary-judgment treatment, and its burdens of discovery, by attaching her own evidence to a *response* would invert this doctrine.

Furthermore, conversion is discretionary, not automatic, and the Court may exclude extrinsic materials and rule on the pleadings. Rule 12(d) converts a 12(b)(6) motion only "[i]f . . . matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). The Fifth Circuit has long held that "Rule 12(d) gives a district court complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." *Isquith ex rel. Isquith v. Middle S. Utils.,* 847 F.2d 186, 194 n.3 (5th Cir. 1988) (citation and internal quotations omitted); *accord Ware v. Associated Milk Producers, Inc.*, 614 F.2d 413, 414–15 (5th Cir. 1980). Thus, "when non-pleading materials are filed with a motion to dismiss, . . . a district court has complete discretion under the Federal Rules of Civil Procedure to either accept the exhibits submitted or not, as it sees fit." *Isquith*, 847 F.2d at 196. Plaintiff cannot compel conversion by attaching exhibits to her Response.

Finally, the sovereign-immunity challenge under Rule 12(b)(1) stands wholly apart from Rule 12(d). Fed. R. Civ. P. 12(d) (conversion applies to "a motion under Rule 12(b)(6) or 12(c)"). On a factual attack to subject-matter jurisdiction, the court may weigh evidence without converting the motion to summary judgment. "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional

2

claims." *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981) (citation and internal quotations omitted); *see also Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

B. **Sovereign Immunity Bars Official-Capacity Claims under Rule 12(b)(1).**

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161. Sovereign immunity applies "regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

Plaintiff states that she "does not seek monetary damages against the Texas A&M University System or its officials in their official capacities," but only against the four officials "in their individual capacities." ECF 21 at 38. Plaintiff does not pursue official-capacity damages, only declaratory and injunctive relief. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official capacities are "persons" under § 1983"); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *Quren v. Jordan*, 440 U.S. 332, 341 (1979).

The declarations Plaintiff seeks are retrospective and barred by *Ex parte Young*. *Ex parte Young* permits suit against a state officer only for prospective relief to halt an ongoing violation of federal law. *Ex parte Young*, 209 U.S. 123, 157 (1908). As the Fifth Circuit recently affirmed, the doctrine "'applies only to prospective relief' and 'does not permit judgments against state officers declaring that they violated federal law in the past.'" *Jackson v. Wright*, 82 F.4th 362, 367 (5th Cir. 2023) (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)); *see Green v. Mansour*, 474 U.S. 64, 67–68 (1985) (declaratory judgment that past conduct violated federal law is unavailable against the State). The court conducts "a 'straightforward inquiry' into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002).

Plaintiff's requested declarations fail that inquiry. She asks the Court to declare "that (1) she did not violate state law; (2) she did not violate a directive; (3) she did not violate policy, and (4) was, instead, terminated for exercising her academic freedom." ECF 1 ¶ 102. Every clause looks backward, asking the Court to adjudicate the lawfulness of a completed termination. That is

precisely the "judgment[] against state officers declaring that they violated federal law in the past" that *P.R. Aqueduct* forbids. *Jackson*, 82 F.4th at 368 (citation omitted). In *Jackson*, the relief was prospective because it was "focused on the legality of the university's current actions, not its past behavior," and rested on a continuing injury. *Jackson*, 82 F.4th at 368. Here, Plaintiff pleads a completed act, her September 2025 termination, and asks the Court to declare that the previous act was unlawful. ECF 1 ¶ 102. That is precisely the retrospective declaration *P.R. Aqueduct* forbids.

Finally, the Board of Regents is not a proper *Ex parte Young* defendant. Plaintiff argues that *Jackson* "is dispositive" because the Board of Regents has "direct governing authority." ECF 21 at 41–42. However, *Jackson* did not rest on governing authority alone. The court held that the *Ex parte Young* exception reached the *Jackson* regents only because (1) the plaintiff alleged an *ongoing* violation, and (2) the board itself had a role in perpetuating it—it had "ignored a letter [the plaintiff] wrote to the Chair of the Board . . . seeking relief from the Board for the ongoing violation." *Jackson*, 82 F.4th at 367–68. The court expressly distinguished cases in which "the sued state officials had no role whatsoever in the alleged constitutional violations—not even a supervisory role." *Id.* (emphasis removed) (citing *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467 (5th Cir. 2020), and *Haverkamp v. Linthicum*, 6 F.4th 662, 670 (5th Cir. 2021)).

This case is *Mi Familia Vota*, not *Jackson*. Plaintiff alleges no ongoing violation by the Board of Regents, no demand made to the Board and ignored, and indeed no Board conduct at all—she pleads only that others made and reviewed the termination decision. ECF 1 ¶¶ 8–11, 87, 98. With no ongoing violation to enjoin and no Board action to redress, the requested relief does not fit within *Ex parte Young*. To the extent the general governing authority of the Regents supplies the "scintilla of 'enforcement'" needed for the connection requirement, *Jackson*, 82 F.4th at 367 (citation omitted), that does not cure the absence of an ongoing federal violation, which *Verizon Maryland* independently requires. The official-capacity claims should be dismissed for lack of jurisdiction.

4

C. **Qualified Immunity bars the First Amendment Claim under Rule 12(b)(6).**

A public official sued in an individual capacity is entitled to qualified immunity unless the plaintiff shows both a constitutional violation and that the right was "clearly established" at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009). The Court may resolve the case on the clearly-established prong alone. *Id.* at 236. The plaintiff bears the burden to show qualified immunity is not available. *Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020).

"[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (citation omitted). The Fifth Circuit recently applied these principles to find qualified immunity applied to a professor's First Amendment retaliation claim, holding that the clearly-established law "must be 'particularized'" to the facts; courts must "frame the constitutional question with specificity and granularity"; the plaintiff "must identify a case that put [the defendant] on notice that his specific conduct was unlawful"; and clearly established law comes from "holdings, not dicta." *Wetherbe*, 138 F.4th at 301–302. The particularized question in the present case is whether it was beyond debate, in September 2025, that a public university violates the First Amendment by terminating an untenured lecturer who departed from the course content her employer approved and published. No decision so holds.

In *Garcetti v. Ceballos*, the Supreme Court expressly declined to decide whether the public-employee-speech doctrine governs classroom teaching. 547 U.S. 410, 425 (2006) ("We need not, and for that reason do not, decide whether the analysis we conduct today would apply in the same manner to a case involving speech related to scholarship or teaching."). Plaintiff concedes this point, acknowledging that "*Garcetti* explicitly exempted 'academic freedom' from its holding." ECF 21 at 44–45. A question the Supreme Court has expressly left open is, by definition, not "beyond debate." Indeed, *Garcetti*'s rationale favors Defendants on the merits. The *Garcetti* Court reasoned that restricting speech that "owes its existence to a public employee's professional responsibilities . . . simply reflects the exercise of employer control over what the employer itself

5

has commissioned or created." *Id.* at 421–22. A lecturer's in-class delivery of an assigned, catalog-defined course is a prime example of employer-commissioned speech.[3]

Furthermore, controlling Fifth Circuit authority forecloses Plaintiff's argument. In *Kirkland v. Northside Indep. Sch. Dist.*, the court held "that public school teachers are not free, under the first amendment, to arrogate control of curricula," and that "when an administrative process is established to compile and amend officially approved material . . . , teachers must respect that process." 890 F.2d 794, 801–02 (5th Cir. 1989). It further recognized that academic freedom was "recognized in the case law but . . . ill-defined," *id.* at 802 n.16 (citing *Hillis v. Stephen F. Austin State Univ.*, 665 F.2d 547, 553 (5th Cir. 1982)). Plaintiff's attempt to confine *Kirkland* to teachers who "fail[] to follow school rules," ECF 21 at 44, understates its holding—and, regardless, is precisely what is alleged here. *Hillis* rejected a faculty member's First Amendment claim, holding that academic freedom's "perimeters are ill-defined." 665 F.2d at 553. And *Buchanan v. Alexander* applied a *Pickering* balancing analysis and *affirmed* qualified immunity, 919 F.3d 847, 852–56 (5th Cir. 2019), failing to show "beyond debate" clarity sufficient to overcome qualified immunity.

Plaintiff's remaining cases do not meet the clearly-established requirement, either. Plaintiff's leading citations are pitched at too high a level of generality to satisfy *al-Kidd* and *Wetherbe*. *Keyisian v. Bd. of Regents*, 385 U.S. 589 (1967), and *Sweezy v. New Hampshire*, 354 U.S. 234 (1957) (plurality), invalidated loyalty-oath and compelled-testimony schemes; *Healy v. James*, 408 U.S. 169 (1972), concerned recognition of a student organization; and *Grutter v. Bollinger*, 539 U.S. 306 (2003), addressed admissions. None concerns an employer's control of assigned curriculum.

Plaintiff's reliance on *Epperson v. Arkansas*, 393 U.S. 97 (1968), through *Dean v. Timpson Indep. Sch. Dist.*, 486 F. Supp. 302 (E.D. Tex. 1979), is particularly misplaced. *Epperson* was an Establishment Clause decision. The Supreme Court struck an anti-evolution statute because "Arkansas' law cannot be defended as an act of religious neutrality." *Epperson*, 393 U.S. at 109. It

---

[3] Nor does the "fair warning" or obvious-clarity route in *Hope v. Pelzer*, 536 U.S. 730, 741 (2002), apply to a question the Supreme Court itself flagged as unresolved. *See Comment, Qualified Immunity—Obviousness Standard—Taylor v. Riojas*, 135 Harv. L. Rev. 421 (2021).

announced no free-speech right of a teacher to depart from an assigned curriculum. To the contrary, *Epperson* reaffirmed that "public education in our Nation is committed to the control of state and local authorities," and that courts "do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values." *Id.* at 104; *see id.* at 116 (Stewart, J., concurring in the result) (the States are "free 'to choose their own curriculums for their own schools'"). *Epperson* thus supports Defendants. And Plaintiff's out-of-circuit and district-court authorities—*Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671 (6th Cir. 2001); *Ker v. Hurd*, 694 F. Supp. 2d 817 (S.D. Ohio 2019); and *Dean*—cannot clearly establish Fifth Circuit law, and each is factually distinct.

### D. Qualified Immunity bars the Procedural Due-Process Claim under Rule 12(b)(6).

Plaintiff's claimed property interest is, at most, debatable—which alone entitles Defendants to qualified immunity. A property interest requests "more than a unilateral expectation"; a claimant "must, instead, have a legitimate claim of entitlement." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Such an interest exists only where "rules or mutually explicit understandings" support a claim of entitlement, *Perry v. Sindermann*, 408 U.S. 593, 601 (1972)—and "'a benefit is not a protected entitlement if government officials may grant or deny it in their discretion,'" *Ridgely v. FEMA*, 512 F.3d 727, 735 (5th Cir. 2008) (quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005)). An entitlement requires "'explicitly mandatory language'" directing a particular outcome once substantive predicates are met. *Id.* (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 463 (1989)); *see Olum v. Wakinekona*, 461 U.S. 238, 249 (1983) (no protected interest absent "substantive limitations on official discretion").

Plaintiff grounds her asserted interest in University Rule 12.01.99.M1 and Texas Education Code § 51.942, arguing she could be summarily dismissed only for "serious misconduct." ECF 21 at 57–62. But Texas law holds that "a statement that an employee may be dismissed for cause is not a specific agreement that an employee may be dismissed only for cause." *Matagorda Cnty. Hosp. Dist. v. Burwell*, 189 S.W.3d 738, 739 (Tex. 2006). Whatever is ultimately best reading, however, is

not dispositive. Because the existence of Plaintiff's property interest is, at the very least, subject to reasonable dispute, it was not "beyond debate," *al-Kidd*, 563 U.S. at 741, and the officials are entitled to qualified immunity on that basis alone.

Even assuming a protected interest, the process Plaintiff received was constitutionally sufficient, and certainly not so deficient that every reasonable official would have known it violated the Fourteenth Amendment. The pretermination stage "need not be elaborate"; it "should be an initial check against mistaken decisions," requiring only "notice and an opportunity to respond." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545–46 (1985). The Constitution is satisfied by "a pretermination opportunity to respond, coupled with post-termination administrative procedures." *Id.* at 547–48. Due process "is flexible and calls for such procedural as the particular situation demands," and a full pre-deprivation hearing is not invariably required, because "where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997) (citation omitted). The governing standard is the familiar *Mathews* balance of private interest, risk of error, and governmental interest. *Mathews v. Eldrige*, 424 U.S. 319, 335 (1976); *Gilbert*, 520 U.S. at 931–32.

The application of the *Mathews* balancing test shows that it is not "clearly established" that any omitted pre-termination steps were federally required. The second factor of the *Mathews* balancing test, the risk of error and "the probable value, if any, of additional or substitute procedural safeguards," *Mathews*, 424 U.S. at 335, favors Defendants. Plaintiff received notice of the grounds for her termination, ECF 1 at ¶ 44, and then invoked, and received, a full post-termination evidentiary hearing before the CAFRT, with witnesses and exhibits, followed by administrative review. ECF 1 ¶¶ 58–65. That is the "pretermination opportunity to respond, coupled with posttermination administrative procedures" *Loudermill* prescribes. The Fifth Circuit's academic-dismissal standard—notice of the cause and the adverse evidence and "a meaningful opportunity to be heard"—was satisfied. *Ferguson v. Thomas*, 430 F.2d 852, 856 (5th Cir. 1970).

8

Additionally, the third factor of the *Mathews* balancing test, the "Government's interest," *Mathews*, 424 U.S. at 335, favors Defendants. There is an institutional interest in curricular integrity and orderly, prompt resolution of a contested personnel matter. *Kirkland*, 890 F.2d at 801–02 (institutional and elected-official Rule in curriculum); *Garcetti*, 547 U.S. at 421–22 (employer control of commissioned content); *Gilbert*, 520 U.S. at 932 (recognizing the government's significant interest in prompt action, as "the Constitution does not require the government to bear the added expense of hiring a replacement while still paying him); *FDIC v. Mallen*, 486 U.S. 230, 240 (1988) (quoted in *Gilbert*, 520 U.S. at 930–31) ("An important government interest, accompanied by a substantial assurance that the deprivation is not baseless . . . may in limited cases demand[] prompt action [to] justify postponing the opportunity to be heard until after the initial deprivation."). At a minimum, it was not "beyond debate" that the omission of a particular internal pretermination step rendered the amount of due process in the present case inadequate.

Note that a university's alleged departure from its own rules is not a federal violation. Plaintiff's core theory, that the University skipped steps prescribed by Rule 12.01.99.M1, does not state a federal claim. As the Fifth Circuit held in a similar setting, "[t]here is not a violation of due process every time a university or other government entity violates its own rules. . . . [U]nless the conduct trespasses on federal constitutional safeguards, there is no constitutional deprivation." *Levitt v. Univ. of Tex. at El Paso*, 759 F.2d 1224, 1230 (5th Cir. 1985) (quoting *Garrett v. Mathews*, 625 F.2d 658, 660 (5th Cir. 1980)). "[T]he Constitution, not state law, defines the minimum process due," and where "the procedures given [the plaintiff] were constitutionally adequate, any violations by the university of its own rules were at best violations only of state law." *Id.* at 1233. So too, here.

Nor are Plaintiff's other due-process authorities sufficient. *Gilbert* states that post-deprivation process can suffice. 520 U.S. at 930. *Logan* concerned a cause of action extinguished by a missed agency deadline; the amount and timing of employment process is governed by *Mathews* and *Gilbert*, and *Logan* does not clearly establish a violation where a full post-termination hearing occurred. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 427, 436–37 (1982) (no post-termination process, only independent lawsuit). The minimum requirements in *Ferguson*, notice of the cause

9

for termination and a hearing before a tribunal that possesses some academic expertise and apparent impartiality, were satisfied. *Ferguson v. Thomas*, 430 F.2d 852, 856 (5th Cir. 1970). The *Wells* Court did not rule on whether plaintiff had a property interest, as the defendant "concede[d]" the due process violation before the district court. *Wells v. Dall. Indep. Sch. Dist.*, 793 F.2d 679, 681 (5th Cir. 1986). There was no post-termination process in *Lucas*, and the remedy was to order a post-termination hearing. *Lucas v. Chapman*, 430 F.2d 945, 948 (5th Cir. 1970). *Brennan* involves a different doctrine, the substantive-due-process "shocks the conscience" doctrine. *Brennan v. Stewart*, 834 F.2d 1248 (5th Cir. 1988). And district court decisions cannot clearly establish law, and none of the provided district court cases involves a full post-termination evidentiary hearing, and thus cannot place the specific question "beyond debate." *See Yates v. Bd. of Regents*, 654 F. Supp. 979 (E.D. Tex. 1987); *Wilkerson v. Univ. of N. Tex.*, 223 F. Supp. 3d 592 (E.D. Tex. 2016); *Senegal v. Jefferson Cnty.*, 785 F. Supp. 86 (E.D. Tex. 1992).

Furthermore, Plaintiff originally brought a claim alleging a breach of her employment contract, but "nonsuit[ed] her breach of contract claim against all Defendants" in her Response. ECF 21 at 10 n.1. The same "official immunity" analysis that defeats Plaintiff's breach of contract claim also shows qualified immunity bars the individual-capacity due-process claim. ECF 14 at 20–25 (describing good-faith, discretionary actions that satisfy the reasonable person standard).

Finally, the individual-capacity due-process claim also fails as to Williams, Hegar, and Hallmark for the independent reason that, on the face of the Complaint, they acted only on Plaintiff's post-termination appeal—they administered the very process that supplies constitutional adequacy. ECF 1 ¶¶ 63–65; ECF 1 ¶ 10. Any asserted pretermination shortfall is not fairly traceable to them. For all these reasons, qualified immunity bars the due-process claim.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the official-capacity claims under Rule 12(b)(1) for lack of subject-matter jurisdiction and dismiss the individual-capacity claims under Rule 12(b)(6) on the ground of qualified immunity and grant Defendants such other and further relief to which they are entitled.

10

Date: June 19, 2026,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

ROB FARQUHARSON
Deputy Attorney General for Legal Strategy

RYAN G. KERCHER
Chief, Special Litigation Division

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100

Respectfully submitted.

*/s/ Wade Johnson*
WADE JOHNSON
Deputy Chief, Special Litigation Division
Texas State Bar No. 24062197
S.D. Tex. No. 1055556
wade.johnson@oag.texas.gov

BRIAN B. TUNG
Assistant Attorney General
Texas State Bar No. 24145179
S.D. Tex. No. 3937738
Brian.Tung@oag.texas.gov

LAUREN E. SAEGER
Assistant Attorney General
Texas State Bar No. 24149365
S.D. Tex. No. 3943412
lauren.saeger@oag.texas.gov

COUNSEL FOR THE DEFENDANTS

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on June 19, 2026, a true and correct copy of the above and foregoing document has been served using the CM/ECF system to all counsel and parties of record.

AMANDA L. REICHEK
Texas State Bar No. 24041762
S.D. Texas Bar No. 840975
TILLOTSON JOHNSON & PATTON
Telephone: (214) 382-3041
Facsimile: (214) 292-6564
areichek@tillotsonlaw.com

COUNSEL FOR PLAINTIFF

*/s/ Wade Johnson*
WADE JOHNSON

11