### IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **DR. MELISSA MCCOUL,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 4:26-CV-00865** |
| | § | |
| **THE TEXAS A&M UNIVERSITY** | § | |
| **SYSTEM, ET AL.,** | § | |
| | § | |
| | § | |
| *Defendants.* | § | |

### PLAINTIFF'S SURREPLY

Plaintiff's Surreply – Page 1

## **Table of Contents**

Table of Authorities………………………………………………………………………..3-5

1.  The Court may properly consider Dr. McCoul's evidence in opposition
    to Defendants' motion…………………………………………………………………..6

2.  Assuming the motion can be decided on the pleadings Dr. McCoul's
    Complaint was more than sufficient……………………………………………………7

3.  Assuming Dr. McCoul's Complaint is insufficient the appropriate remedy
    is amendment, not dismissal……………………………………………………………8

4.  Sovereign immunity does not bar Dr. McCoul's official capacity claims
    against the Board of Regents defendants……………………………………………….8

5.  Qualified immunity does not bar Dr. McCoul's First Amendment claim………………..10

6.  Qualified immunity does not bar Dr. McCoul's Due Process claims……………………13

Prayer…………………………………………………………………………………….17

## Table of Authorities

### Cases

*Ashcroft v. al-Kidd*,
    563 U.S. 731, 743 (2011)……………………………………………………………10

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937, 1940 (2009)……………………………………………………………7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 545 (2007)…………………………………………………………………7

*Board of Regents of State Colleges v. Roth,*
    408 U.S. 564, 578 (1972)………………………………………………………………14

*Buchanan v. Alexander,*
    919 F.3d 847 (5th Cir. 2019)…………………………………………………………...11

*Cleveland Bd. of Educ. v. Loudermill,*
    470 U.S. 532, 543 (1985)………………………………………………………………16

*Dean v. Timpson Indep. Sch. Dist.,*
    486 F. Supp. 302, 308 (E.D. Tex. 1979)……………………………………………..12

*DeLoach v. Woodley*,
    405 F.2d 496, 496-97 (5th Cir. 1968)……………………………………………………8

*Ex parte Young*,
    209 U.S. 123 (1908)……………………………………………………………….8, 9

*Ferguson v. Thomas,*
    430 F.2d 852 (5th Cir.1970)……………………………………………………………15

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006)…………………………………………………………..10, 11

*Gilmer v. Homar*,
    520 U.S. 924 (1997)…………………………………………………………...14

*Gomez v. Toledo*,
    446 U.S. 635, 640 (1980)..........................................................................................7

*Grutter v. Bollinger*,
    539 U.S. 306, 329 (2003)………………………………………………………12

*Hardy v. Jefferson Cmty. Coll.*,
    260 F.3d 671, 682 (6th Cir. 2001)…………………………………………………………...12

*Healy v. James*,
    408 U.S. 169, 180-81 (1972)………………………………………………………………..12

*Hillis v. Stephen F. Austin State Univ.*,
    665 F.2d 547, 553 (5th Cir. 1982)…………………………………………………………11

*Hitt v. City of Pasadena*,
    561 F.2d 606, 608–09 (5th Cir. 1977)………………………………………………….7, 8

*Hope v. Pelzer*,
    536 U.S. 730, 741 (2002)……………………………………………………………………10

*In re Dinnan*,
    661 F.2d 426 (5th Cir. 1981)……………………………………………………………...12

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*,
    668 F.3d 281, 287 (5th Cir. 2012)………………………………………………………….6

*Jackson v. Wright*,
    82 F.4th 362, 368 (5th Cir. 2023)………………………………………………7, 8, 9

*Jones v. La. Bd. of Sup'rs of Univ. of La. Sys.*,
    809 F.3d 231, 237 (5th Cir. 2015)………………………………………………..16

*Kerr v. Hurd*,
    694 F. Supp. 2d 817, 842-43 (S.D. Ohio 2010)………………………………………..12

*Keyishian v. Bd. of Regents of Univ. of State of N. Y.*,
    385 U.S. 589, 603 (1967)………………………………………………………………10

*Kirkland v. Northside Indep. Sch. Dist.*,
    890 F.2d 794 (5th Cir. 1989)…………………………………………………………...11

*Lucas v. Chapman*,
    430 F.2d 945 (5th Cir.1970)…………………………………………………………14

*Matagorda Cnty. Hosp. Dist. v. Burwell*,
    189 S.W.3d 738 (Tex. 2006)…………………………………………………………...13

*Mathews v. Eldridge*,
    424 U.S. 319 (1976)…………………………………………………………………..15, 17

*Nelson v. Univ. of Texas at Dallas*,

535 F.3d 318, 322 (5th Cir. 2008)……………………………………………………………9

*Off. for Prot. & Advoc. v. Stewart*,
563 U.S. 247, 255 (2011)…………………………………………………………………..9

*Perry v. Sindermann,*
408 U.S. 593, 602–603 (1972)…………………………………………………………14

*Plummer v. Univ. of Houston*,
860 F.3d 767, 777 (5th Cir. 2017)…………………………………………………...15

*Walsh v. Hodge,*
975 F.3d 475, 483 (5th Cir. 2020)…………………………………………………...16

*Warnock v. Pecos Cty.*,
88 F.3d 341, 343 (5th Cir. 1996)………………………………………………..9

*Wells v. Dallas Indep. Sch. Dist.*,
793 F.2d 679 (5th Cir.1986)…………………………………………………………14

*Wilkerson v. Univ. of N. Tex.*,
223 F. Supp. 3d 592, 605 (E.D. Tex. 2016)……………………………………………14

*Williamson v. Tucker*,
645 F.2d 404, 412-13 (5th Cir. 1981)…………………………………………………6

*Yates v. Bd. of Regents*,
654 F. Supp. 979 (E.D.Tex.1987)…………………………………………………...15

## Statutes

TEX. EDUC. CODE §51.352……………………………………………………………9

TEX. EDUC. CODE §51.942…………………………………………………………..14

## Federal Rules

FED. R. CIV. P. 8(a)(2)…………………………………………………………………8

FED. R. CIV. P. 12……………………………………………………………………6, 7

FED. R. CIV. P. 56……………………………………………………………………6

Comes now, Plaintiff, Dr. Melissa McCoul, and files this Surreply in opposition to Defendant's Motion to Dismiss, Docket No. 14. *See* J. Hanen "Civil Procedures" §7.E. In support thereof, Dr. McCoul would respectfully show the Court as follows:

**1. The Court may properly consider Dr. McCoul's evidence in opposition to Defendants' motion.**

With respect to Defendants' sovereign immunity challenge asserted under Rule 12(b)(1), this Court is permitted to consider affidavits and other evidence outside the pleadings in resolving that challenge. *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981); *see also In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 287 (5th Cir. 2012) (a court's determination that it lacks jurisdiction may be based on the complaint, the complaint supplemented by undisputed facts in the record, or the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts). Defendants don't dispute or lodge any evidentiary object to any of evidence submitted by Dr. McCoul so this evidence may be properly relied upon by the Court.

And, with respect to Defendants' Rule 12(b)(6) official immunity challenge, the Rule is clear: if matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56, and all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion. FED. R. CIV. P. 12(d). Although Defendants now appear to suggest that this Court exclude the evidence they submitted and on which their motion relies,[1] Defendants presented matters beyond the pleadings in support of their motion and Dr. McCoul was therefore permitted, if not required, to do the same in response.

---

[1] *See* Def. Reply at 2.

**2. Assuming Defendants' motion is decided on the pleadings, Dr. McCoul's Complaint was more than sufficient.**

Although Defendants characterize Dr. McCoul's Complaint as "deficient"[2] they fail to describe how this is so; to the extent Defendants take issue with a lack of allegations establishing a waiver of immunity, immunity is an affirmative defense and Dr. McCoul was under no obligation address this defense in her Complaint. *See Jackson v. Wright*, 82 F.4th 362, 368 (5th Cir. 2023), citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) ("state sovereignty is an affirmative defense and plaintiffs are not required to anticipate or plead around affirmative defenses.").

At any rate, the applicable standards for a Rule 12 motion to dismiss are well-known, and lenient. A complaint must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  A claim is facially plausible when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009). Stated another way, Dr. McCoul's factual allegations must merely be enough to raise her right to relief above the speculative level, taking her allegations are true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

Dr. McCoul's 24-page *Original Complaint and Jury Demand*, drafted with the benefit of thousands of documents obtained via Dr. McCoul's public information request, an 8-hour post-termination hearing, and the detailed findings of two independent faculty bodies, more than meets this lenient standard. Although not required to do so, Dr. McCoul referenced binding, well-established federal authority as well, demonstrating how her factual allegations fit within the First Amendment and Due Process legal framework.

---

[2] *See* Def. Reply at 1.

### 3. Assuming Dr. McCoul's Complaint is insufficient, the appropriate remedy is amendment, not dismissal.

Assuming for the sake of argument that Dr. McCoul's Complaint is "deficient," dismissal would be inappropriate, as a complaint should be dismissed under Rule 12 only after affording every opportunity for the plaintiff to state a claim upon which relief can be granted, unless it is clear amendment would be futile. *Hitt v. City of Pasadena*, 561 F.2d 606, 608–09 (5th Cir. 1977); *DeLoach v. Woodley*, 405 F.2d 496, 496-97 (5th Cir. 1968). Consequently, when it appears a more careful or detailed drafting might overcome the deficiencies on which dismissal is sought, a Court must allow a plaintiff the opportunity to amend the Complaint. *Hitt*, 561 F.2d at 608–09. As demonstrated by her "sixty-four-page summary judgment response attaching sixty-one new exhibits,"[3] Dr. McCoul can certainly "overcome" any deficiencies identified by the Court.

### 4. Sovereign immunity does not bar Dr. McCoul's official capacity claims against the Board of Regents defendants.

Defendants attempt to distinguish *Jackson* from the facts of this case, arguing that unlike the Board of Regents in *Jackson*, Dr. McCoul's *Ex parte Young* allegations "rest on governing authority alone."[4] This is a misrepresentation of Dr. McCoul's position.. First, the *Jackson* court made clear that Dr. McCoul need only assert "some," or "a scintilla," of connection between the Board of Regents defendants and the challenged action. *Jackson*, 82 F.4th at 367. Noting the Board of Regents' "governing authority" over the university and direct governing authority over the university officials that continue to violate the plaintiff's First Amendment rights, the *Jackson* court determined the plaintiff had made the requisite showing under *Ex parte Young* to pursue his First Amendment claim against them in their official capacities. *Id.* Here, Texas A&M's Board of Regents exercises the same governing authority: "The governance of the System is vested in the

---

[3] *See* Def. Reply at 1.
[4] *See* Def. Reply. at 4.

Board of Regents"[5]; they "shall make bylaws, rules, and regulations it deems necessary and proper for the government of the university system and its institutions, agencies, and services."[6] In fact, the Board of Regents has an even greater role in the facts of this case than they did in *Jackson*, as its own By-Laws reflect a statutory obligation to protect faculty from outside influence: "Section 51.352 of the Texas Education Code states that the state's higher education boards are expected to '[p]reserve institutional independence and to defend its right to manage its own affairs through its chosen administrators and employees.'"[7]Also, like the members of the Board of Regents in *Jackson*, the Texas A&M Board of Regents has "direct governing authority" over the officials responsible for the deprivation of Dr. McCoul's First Amendment and Due Process rights, as it appoints the Chancellor and the President. *Id.*[8] In fact, the By-Laws describe these officials as the Board of Regents' "direct reports." *Id.*

Finally, and this is something absent in *Jackson*, Chancellor Hegar publicly vowed to "***work with the Board of Regents*** to make certain that" Dr. McCoul was disciplined, and "ensure this ***does not happen again*** at one of our campuses."[9] Prospective relief, as authorized by *Ex parte Young*, is appropriate based not only on the Regents' apparent role in Dr. McCoul's termination, but its ongoing role in upholding practices that violate the First Amendment.

To put it mildly, the members of the Board of Regents have "some" or "a scintilla" of connection to Dr. McCoul's constitutional violations as well as Defendants' ongoing deprivation of Dr. McCoul's rights. Like the professor in *Jackson*, Dr. McCoul has asserted the correct remedy

---

[5] *See* Pl. Resp., Exh. 2-P, §2.
[6] *Id.* at §4.
[7] *Id*.
[8] *Id.; see also* Pl. Resp., Exh. 2-O ("This policy outlines the responsibilities and authority of the chancellor for the management and operation of The Texas A&M University System (system) under the direction of the Board of Regents (board)."
[9] *See* Pl. Resp., Exh. 2-I.

Plaintiff's Surreply – Page 9

against the members of the Board of Regents, as she seeks injunctive relief, in the form of reinstatement, against them.[10] *Jackson*, 82 F. 4th at 368, *citing Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011); *Warnock v. Pecos Cty.*, 88 F.3d 341, 343 (5th Cir. 1996) (reinstatement constitutes prospective relief); *Nelson v. Univ. of Texas at Dallas*, 535 F.3d 318, 322 (5th Cir. 2008) (prospective injunctive relief against a state official is permitted).

### 5. Qualified immunity does not bar Dr. McCoul's First Amendment claim.

In their Reply, Defendants rehash their argument that Dr. McCoul's First Amendment rights were not clearly established at the time of their infringement of these rights.[11] Qualified immunity is an affirmative defense available to officials that make "reasonable but mistaken" judgments about "open" legal questions. *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). When settled constitutional principles apply with obvious clarity to give "fair warning" of a constitutional violation, the "clearly established" prong of qualified immunity is met. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Texas A&M has had "fair warning" since at least 1967, when the Supreme Court observed the importance of the First Amendment in the college <u>classroom</u>:

> Our Nation is deeply committed to safeguarding academic freedom, which is of transcendent value to all of us and not merely to the teachers concerned. That freedom is therefore ***<u>a special concern of the First Amendment, which does not tolerate laws that cast a "pall of orthodoxy" over the classroom</u>***. The vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools. The classroom is peculiarly the "marketplace of ideas." The Nation's future depends upon leaders trained through wide exposure to that robust exchange of ideas which discovers truth "out of a multiple of tongues, rather than through any kind of authoritative selection."

> *Keyishian v. Bd. of Regents of Univ. of State of N. Y.*, 385 U.S. 589, 603 (1967) (cleaned

up) (emphasis added). Defendants disclaim "fair warning," though, because the Supreme Court

---

[10] *See* Complaint, ¶79, 91, and "Prayer for Relief" (g).
[11] *See* Def. Reply at 5.

Plaintiff's Surreply – Page 10

left the matter of academic freedom "unresolved" in *Garcetti v. Ceballos*, 547 U.S. 410 (2006).[12] But *Garcetti* did nothing of the sort; rather, *Garcetti* explicitly exempted academic freedom from its analysis, leaving undisturbed the long line of jurisprudence acknowledging the application of the First Amendment in the classroom. *Id.* at 425 ("Justice Souter suggests today's decision may have important ramifications for academic freedom, at least as a constitutional value. There is some argument that expression related to academic scholarship or classroom instruction implicates additional constitutional interests that are not fully accounted for by this Court's customary employee-speech jurisprudence. We need not, and for that reason do not, decide whether the analysis we conduct today would apply in the same manner to a case involving speech related to scholarship or teaching."). By its very terms *Garcetti*'s analysis does not reach academic freedom, and the Supreme Court has never revisited the issue.

Consequently, courts have continued to apply the First Amendment to the classroom setting, including in *Kirkland v. Northside Indep. Sch. Dist.*, 890 F.2d 794 (5th Cir. 1989), on which defendants rely for its official immunity argument. The *Kirkland* court acknowledged it should <u>not</u> be read to "suggest that public school teachers foster free debate in their classrooms only at their own risk or that their classrooms must be 'cast with a pall of orthodoxy.'" *Id.* at 801-02. This is an explicit reference to *Keyishian* and the importance of the First Amendment to academic freedom, as well as the "pall of orthodoxy" that the First Amendment is meant to prevent. Despite defendants' expansive reading, *Kirkland* stands only for the obvious proposition that K-12 educators are bound by a school district's policies that guide teachers' curricular choices.[13] *Id.* at

---

[12] *See* Def. Reply at 5-6, n.3.

[13] While defendants represent that they allege Dr. McCoul's teaching "failed to follow school rules" by teaching her curriculum thus bringing it within *Kirkland*'s ambit (Def. Reply at 6), they have yet to identify any policy that forbade these lessons . In fact, as set forth in Dr. McCoul's Response, the subjects she covered in her Children's Literature course were required because the course met the University' LPC core curriculum requirements. *See* Pl. Resp. at 32-34. Moreover, it is hotly disputed that Dr. McCoul defied any directive. *See* Pl. Resp. at 55-56.

Plaintiff's Surreply – Page 11

802. Suffice it to say, the First Amendment applies in the college classroom setting, and this has been the law of the land for over half a century. *See Hillis v. Stephen F. Austin State Univ.*, 665 F.2d 547, 553 (5th Cir. 1982) (describing academic freedom as "well recognized" and noting its "roots have been found in the First Amendment insofar as it protects against infringements on a teacher's freedom *concerning classroom content and method*.") (emphasis added); *Buchanan v. Alexander*, 919 F.3d 847 (5th Cir. 2019) (applying a *Pickering-Connick* analysis to college professor's classroom speech); *Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671, 682 (6th Cir. 2001) (professor's use of vulgarity and racial slurs during lesson on historical use of oppressive and marginalizing speech protected by First Amendment); *Kerr v. Hurd*, 694 F. Supp. 2d 817, 842-43 (S.D. Ohio 2010) (lesson addressing medical technique for delivering babies held to be a matter of public concern because it was relevant to national debate on best practices for delivering babies); *Dean v. Timpson Indep. Sch. Dist.,* 486 F. Supp. 302, 308 (E.D. Tex. 1979) ("[t]o exclude a subject from the public school curriculum because it offends the community, or to discharge a teacher for objectively presenting that subject, runs counter to the spirit of the First Amendment…"); *In re Dinnan*, 661 F.2d 426, 430 (5th Cir. 1981) (academic freedom is "of transcendent value to all of us and not merely to the teachers concerned"); *Healy v. James*, 408 U.S. 169, 180-81 (1972) ("[t]he college classroom with its surrounding environs is peculiarly the 'marketplace of ideas,' and we break no new constitutional ground in reaffirming this Nation's dedication to safeguarding academic freedom.") (emphasis added); *Grutter v. Bollinger*, 539 U.S. 306, 329 (2003), *superseded on other grounds by Const. 1963, art. 1, § 26* ("[w]e have long recognized that, given the important purpose of public education and the expansive freedoms of speech and thought associated with the university environment, universities occupy a special niche in our constitutional tradition.").

Moreover, although Dr. McCoul is not required to establish actual, subjective notice on defendants' part, she does anyway. University Rule 12.01.99.M1, §2.1 provides, "[e]ach faculty member is entitled to full freedom in the classroom in discussing the subject being taught. …", and §2.2 acknowledges that "[t]he rights and privileges of faculty members extended by society and protected by governing boards and administrators through written policies and procedures on academic freedom and tenure, <u>and as further protected by the courts</u> …"[14] Texas A&M's "Minimum Syllabus Requirements" similarly reference academic freedom, and permit professors to include the following statement on their syllabi: "Texas A&M recognizes that the pursuit of truth through open and robust discourse is critical to academic inquiry. … In this "marketplace of ideas" we encourage civil dialogue creating an environment that allows individuals to express their ideas and to have their ideas challenged in respectful and responsible ways. Students can learn more about Freedom of Expression and Free Speech on the University's website about the First Amendment."[15]

### 6. Qualified immunity does not bar Dr. McCoul's Due Process claims.

Describing Dr. McCoul's property interest in her employment as "debatable," Defendants also rehash their argument, based on *Matagorda Cnty. Hosp. Dist. v. Burwell*, 189 S.W.3d 738 (Tex. 2006), that if an employer's policy provides that employees "may" be fired for cause they may still be fired without cause.[16] But, assuming for the sake of argument that this state court opinion has anything to do with federal Due Process jurisprudence, Texas A&M's policy, which is incorporated by reference in the very first sentence of Dr. McCoul's appointment letter,[17] states

---

[14] *See* Pl. Resp., Exh. 3-Y, at §2.2.

[15] *See id. at* Exh. 3-Z; *see also* Exhs. 2-L, 2-P, 2-Q, 2-R, 3-AA, and 3-BB.

[16] *See* Def. Reply at 7-8.

[17] Texas A&M's Rules are authorized by Chapter 85.21 of the Texas Education Code, which provides that Texas A&M University's Board of Regents "shall make bylaws, rules, and regulations it deems necessary and proper for the government of the university system and its institutions, agencies, and services." Pursuant to that statutory authority, Texas A&M has promulgated University Rule 12.01.99.M1, which is incorporated by reference in the very first

that the termination of a faculty member with a term appointment prior to the expiration of the appointment "***must***" be based on good cause.[18] *Burwell* is nonbinding and inapposite.

What's more, Dr. McCoul was terminated pursuant to Texas A&M's "summary dismissal" procedures.[19] The requirements and procedures applicable to "summary dismissal" of faculty like Dr. McCoul are contained at University Rule 12.01.99.M1, §9.2 and entitle Dr. McCoul to even more robust due process rights by imposing a requirement that the University establish not only "good cause," but "serious misconduct," and making it clear that faculty may only be summarily dismissed "at the conclusion of an investigation process and decision thereof." *Id.* at §9.2.1 *et seq*. Defendants do not attempt their *Burwell* argument with respect to the University's summary dismissal procedures at all, probably because these standards and procedures are codified at Chapter 51.942 of the Texas Education Code which makes it clear that these statutory procedures are meant to "ensure that the institution provides the faculty member with appropriate due process." *Id.* As set forth in Dr. McCoul's Complaint and Response, it is undisputed that none of these steps were followed.

It is, by now, beyond dispute that public employees who can only be discharged for cause have a constitutionally-protected property interest in their employment and cannot be fired without due process. *Gilbert v. Homar*, 520 U.S. 924, 928–29 (1997), *citing Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 578 (1972) and *Perry v. Sindermann,* 408 U.S. 593, 602–603 (1972). This property interest has been recognized within the Fifth Circuit for decades. *Wilkerson v. Univ. of N. Tex.*, 223 F. Supp. 3d 592, 605 (E.D. Tex. 2016) (even long-standing custom and practice can create an entitlement to one's job); *Wells v. Dallas Indep. Sch. Dist.*, 793 F.2d 679 (5th

---

sentence of Dr. McCoul's term contract. University Rule 12.01.99.M1 states that it "appl[ies] … to faculty members…" *See* Pl. Resp., Exhibit 3-Y.
[18] *See* Pl. Resp., Exh. 3-Y, §5.1.
[19] *See* Pl. Resp., Exh. 3-V, 3-W.

Plaintiff's Surreply – Page 14

Cir.1986) (upholding district court's finding that professor did have a property interest in continued employment); *Lucas v. Chapman*, 430 F.2d 945 (5th Cir.1970) (finding that a professor's "long employment in a continuing relationship through the use of renewals of short-term contracts was sufficient to give him the necessary expectancy of re-employment that constituted a protectible interest"); *Ferguson v. Thomas*, 430 F.2d 852 (5th Cir.1970) (holding that a non-tenured professor may acquire a protectible property interest in continued employment if he has a reasonable expectation of the same); *Yates v. Bd. of Regents*, 654 F. Supp. 979 (E.D.Tex.1987) (finding that the court could "not rule as a matter of law that plaintiff had no property interest in continued employment").

In their reply, for the first time, Defendants invoke *Mathews v. Eldridge*, 424 U.S. 319 (1976) for the proposition that Dr. McCoul received "constitutionally sufficient" due process because the pre-termination stage should merely be "an initial check against mistaken decisions," requiring "only notice and an opportunity to respond."[20] In *Mathews*, the Supreme Court set forth a three-part test for determining the sufficiency of due process procedures. Those factors are (1) plaintiff's interests that will be affected, (2) the risk of an erroneous deprivation of such interests through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the university's interests, including the burden that additional procedures would entail. *Mathews*, 424 U.S. at 335.

The balancing test in *Mathews* is clearly a fact-intensive analysis. *Plummer v. Univ. of Houston*, 860 F.3d 767, 777 (5th Cir. 2017), as revised (June 26, 2017) ("[w]hether a state university has provided an individual student sufficient process is a fact-intensive inquiry and the procedures required to satisfy due process will necessarily vary depending on the particular

---

[20] *See* Def. Reply at 8-9.

Plaintiff's Surreply – Page 15

circumstances of each case."). Yet, defendants fail to support its *Mathews* argument with any facts. At any rate, application of the *Mathews* test does not help Defendants.

Defendants ignore the first factor, because courts have long held that the loss of employment is a significant interest worthy of protection. *See, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985) ("the significance of the private interest in retaining employment cannot be gainsaid"); *Jones v. La. Bd. of Sup'rs of Univ. of La. Sys.*, 809 F.3d 231, 237 (5th Cir. 2015) (terminated professor's interest in retaining job was "significant"); *Walsh v. Hodge*, 975 F.3d 475, 483 (5th Cir. 2020) ("[T]he denial of public employment is a serious blow to any citizen.").

Defendants instead argue that the second and third factors dictate that the due process Dr. McCoul received was sufficient. But application of the second factor – "the risk of an erroneous deprivation of such interests through the procedures used" – weighs in Dr. McCoul's favor. In fact, this is a bold argument for Defendants to now make, since they suggest that they were "mistaken" that Dr. McCoul violated directives, the reason advanced for her termination.[21] Nor did Texas A&M's *post*-termination due process serve as an adequate substitute for the total lack of pre-termination due process. The outcome of her CAFRT hearing was a *unanimous* decision that the university did *not* follow its due process procedures, Dr. McCoul did *not* violate a directive, and that there was *not* good cause to terminate her employment, yet President Williams, Chancellor Hegar, and Vice Chancellor Hallmark upheld her termination anyway. This was disappointing but not surprising, since Chancellor Hegar had previously vowed to "work with the Board of Regents to make certain that the A&M System takes the disciplinary action necessary to ensure that this does not happen again at one of our campuses."[22] Finally, with respect to the third element,

---

[21] *See* Def. Mot. at 11.
[22] *See* Pl. Resp., Exh. 2-I.

Plaintiff's Surreply – Page 16

defendants obliquely state "[t]here is an institutional interest in curricular integrity and orderly, prompt resolution of a contested personnel matter."[23] But this recitation of the third element is no evidence, and is no answer to its additional inquiry into "the burden that additional procedures would entail." *Mathews*, 424 U.S. at 335. Simply put, Defendants don't come close to establishing that *Mathews* entitles defendants to official immunity with respect to Dr. McCoul's Due Process claims.

**Prayer**

For these reasons, and those stated more fully in her Response, Dr. McCoul prays that Defendants' motion be denied in its entirety.

Date: June 22, 2026                                     Respectfully Submitted:

                                                       /s/ *Amanda L. Reichek*
                                                       Amanda L. Reichek
                                                       Texas State Bar No. 24041762
                                                       S.D. Texas Bar No. 840975
                                                       areichek@tillotsonlaw.com
                                                       Jeffrey M. Tillotson
                                                       Texas State Bar No. 20039200
                                                       S.D. Texas Bar No. 27831
                                                       jtillotson@tillotsonlaw.com
                                                       Sara Babineaux
                                                       State Bar No. 24125102
                                                       S.D. Texas Bar No. 3959037
                                                       sbabineaux@tillotsonlaw.com
                                                       **TILLOTSON PATTON**
                                                       1201 Main Street, Suite 1300
                                                       Dallas, Texas 75202
                                                       (214) 382-3041 Telephone
                                                       (214) 292-6564 Facsimile

                                                       Attorneys for Dr. McCoul

---

[23] *See* Def. Reply at 9.

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 22, 2026 a true and correct copy of the foregoing was served on Defendants' counsel of record via CM/ECF.

/s/ *Amanda L. Reichek*
Amanda L. Reichek